No. 91-530

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

NORTHWEST PUBLISHING,

    Plaintiff and Appellant,

-vs-

MONTANA DEPARTMENT OF LABOR AND
INDUSTRY, UNEMPLOYMENT INSURANCE
DIVISION, CONTRIBUTIONS BUREAU,

    Defendant and Respondent.

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Dana L. Christensen, Kendra L. Kawaguchi; Murphy,
Robinson, Heckathorn & Phillips, Kalispell, Montana

    For Respondent:

        Melanie A. Symons; Board of Labor Appeals,
Department of Labor and Industry, Helena, Montana

    For Amicus Curiae:

        Richard M. Baskett; Datsopoulous, MacDonald & Lind,
Missoula, Montana

FILED

FEB 1 0 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  April 15, 1992

Decided:  February 10, 1993

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Northwest Publishing (Northwest) appeals a decision of the District Court for the Eleventh Judicial District, Flathead County, affirming a decision of the Board of Labor Appeals. We affirm.

The issue is whether the District Court erred in affirming the decision of the Board of Labor Appeals that traveling salespeople under contract with Northwest are not "independent contractors" as defined by § 39-51-201(14), MCA.

Northwest is a sole proprietorship which prints and publishes vacation and travel guides in Kalispell, Montana. Its sales representatives travel throughout the northwestern United States and Canada soliciting the purchase of advertisements to appear in Northwest's magazines. These salespeople operate under an "Independent Contractor Agreement" and receive a set commission rate for all advertisements sold. They are provided lodging, sales forms, reporting forms, a company telephone credit card number, and company gas credit cards; one salesperson occasionally was provided a car owned by Northwest's owner for use on sales trips.

In January 1990, the Unemployment Insurance Division of the Montana Department of Labor and Industry determined that commission sales representatives working for Northwest were employees of Northwest for purposes of unemployment insurance taxation. Northwest unsuccessfully appealed that determination to the Department of Labor and Industry and the Montana Board of Labor Appeals, arguing that the salespeople are independent contractors. It then appealed to the Eleventh Judicial District Court, which affirmed

2

the decision of the Board of Labor Appeals. This appeal followed.

Did the District Court err in affirming the decision of the Board of Labor Appeals that traveling salespeople under contract with Northwest are not "independent contractors" as defined by § 39-51-201(14), MCA?

Under § 39-51-2410(5), MCA, factual findings of the Board are conclusive if they are supported by the evidence and there has been no fraud, and the jurisdiction of a reviewing court is confined to questions of law. "Supported by the evidence" means supported by substantial evidence, which is "something more than a scintilla of evidence, but may be less than a preponderance of the evidence." Gypsy Highview Gathering System v. Stokes (1986), 221 Mont. 11, 15, 716 P.2d 620, 623.

Once disputes about the underlying facts are resolved, the issue of whether salespeople are independent contractors or employees is a question of law. Carlson v. Cain (1983), 204 Mont. 311, 317, 664 P.2d 913, 916; appeal after remand (1985), 216 Mont. 129, 700 P.2d 607. Our standard of review of a question of law is whether the conclusion is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

Northwest specifically challenges the finding that "[t]he two commission sales persons testifying at the hearing did not have an advertising sales business which they owned or operated either before or after association with [Northwest]." Northwest points out that one of the salespeople testified that he had published a

3

paper, for which he sold advertising, prior to working for Northwest. However, the brief reference to the paper indicates that the business in which the person was engaged was publishing a paper, not selling advertising. The other salesperson who testified stated that she worked in sales for another employer after working for Northwest. Owning or operating a sales business is different from working in sales for someone else. We conclude that the finding that the salespeople did not own or operate their own sales businesses was supported by substantial evidence. Therefore, the finding is conclusive under § 39-51-2410(5), MCA.

Northwest's chief arguments relate to the definition of an "independent contractor" set forth at § 39-51-201(14), MCA, and commonly called the "A B test." As stated above, the issue of whether the salespeople are independent contractors or employees is an issue of law.

Section 39-51-201(14), MCA, provides:

"Independent contractor" means an individual who renders service in the course of an occupation and:

(a) has been and will continue to be free from control or direction over the performance of the services, both under his contract and in fact; and

(b) is engaged in an independently established trade, occupation, profession, or business.

Because the conjunctive "and" is used in the definition of "independent contractor," the absence of either the "A" or the "B" part of the test results in a conclusion of employment. Thus, Northwest must establish both "A" and "B" in order to prevail, as a matter of law, on its contention that the salespeople are

4

independent contractors. Because we determine that the Board did not err in concluding that Northwest failed to establish the "B" part of the test, we need not address whether the "A" (control) component was met.

Quoting the definition of a "profession" from Black's Law Dictionary, Northwest argues that sales is an independently established profession within the purview of § 39-51-201(14)(b), MCA. It cites no legal authority for such an assertion, and we have discovered none. Northwest claims that the salespeople's belief that sales is an independent profession and that the ability to make a sale is an independent skill, together with the fact that one of the salespeople was re-employed as a salesperson after leaving Northwest, are sufficient to establish that its salespeople are "engaged in an independently established trade, occupation, profession, or business" under § 39-51-201(14)(b), MCA.

Notwithstanding the trend in recent years for people in many occupations to prefer the term "profession" to "occupation," Northwest's argument boils down to an assertion that because sales is a recognized occupation or profession involving marketable skills, it has met the "B" part of the independent contractor test. Accepting such a premise would equate the "B" test of being engaged in an independently established business or occupation with merely rendering services in the course of an occupation, as is already separately required in the first clause of § 39-51-201(14), MCA. Such an interpretation would render the "B" requirement a nullity.

We have previously rejected the notion that possessing a

5

saleable skill was the equivalent of being engaged in an independently established business, trade or occupation. In our leading case on this subject, Standard Chem. Mfg. Co. v. Employment Sec. (1980), 185 Mont. 241, 605 P.2d 610, Standard Chemical asserted that its commission salespeople were independent contractors rather than employees. With specific regard to the "independently established business" criterion and based on its finding that the salespeople had a saleable skill, the district court determined that they were independent contractors. We reversed, holding that the salespeople were employees. Standard Chem., 605 P.2d at 616.

Standard Chem. was the first case in which we interpreted the "independently established business" component of the statutory independent contractor test. We surveyed both the case law and statutes from our sister states and set forth much of that law before turning our attention to the case before us and the findings of the district court therein. Our holding that the salespeople were employees was premised on the following specifics: (1) no "business" existed independently and apart from the salespeople's relationship with Standard Chemical; (2) the salespeople were dependent on Standard Chemical for their employment; and (3) should the relationship with Standard Chemical terminate, the "business" would terminate as well. Id. at 615-16.

The record before us is nearly devoid of evidence in support of Northwest's position with regard to these fundamental questions of whether its salespeople were engaged in an independently

6

established business. Indeed, the fact that one of the salespeople subsequently was re-employed as a salesperson by a different entity supports our conclusion that these salespeople are employees, not independent contractors. When that person's relationship with Northwest terminated, her "business" terminated as well, until such time as she could find another job as a salesperson.

We did consider additional criteria in Standard Chem. Specifically, we determined that the salespeople's right to terminate their employment and to do so without liability for a peremptory termination, as well as their lack of authority to hire subordinates, indicated employment--rather than independent contractor--status. Id. at 616. Similarly here, Northwest's salespeople retained the right to terminate their employment and to do so without liability. Of the factors we specifically applied in Standard Chem. relating to the "independently established business" question, the only one which might indicate independent contractor status here is the ability of Northwest's salespeople to hire subordinates if they choose to do so. The existence of this one factor is insufficient to mandate a conclusion that the "B" part of the independent contractor test is met here.

Northwest contends that both Standard Chem. and Zimmer-Jackson Assoc. v. Dept. of Labor (1988), 231 Mont. 357, 752 P.2d 1095, are distinguishable from the case before us. We note that in Zimmer-Jackson, we also concluded that a sales associate was an employee rather than an independent contractor. There, we applied five criteria in reaching our determination; employee status was

7

indicated by each. Again, as in Standard Chem., one or two of those criteria might indicate independent contractor status here. None overcomes the basic and very fundamental fact, however, that Northwest's salespeople were not "engaged in an independently established business" of their own. Nor does anything in Zimmer-Jackson suggest that those five criteria constitute a "bright line test" for purposes of § 39-51-201(14)(b), MCA.

Northwest's main argument with regard to both Standard Chem. and Zimmer-Jackson is that our decisions there hinged on the fact that the "business" in which the "employers" were engaged--sales-- was inseparable from the business or occupation in which the salespeople were engaged. However, the fact that the entities in both cases were involved, at least in part, in sales did not form the basis for our holdings relating to the "independently established business" prong of the independent contractor test. In Standard Chem., the fact that the employer was a Nebraska corporation engaged in the manufacturing, distributing and wholesaling of livestock nutritional products merely was noted in our recitation of the facts of the case. Standard Chem., 605 P.2d at 611. And while we did address that matter in Zimmer-Jackson, our discussion related to the existence of what was then the "B" part of an "ABC" test: namely, whether the service being performed is "either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise. . . ." Section 39-51-203(4), MCA (1983); Zimmer-Jackson, 752 P.2d at 1099. As we

8

noted in <u>Zimmer-Jackson</u>, that prong of the earlier test was deleted by the 1987 legislature. <u>Id</u>.

Therefore, as we did in <u>Standard Chem.</u> on a similar record, so we conclude here that the "B" portion of the "A B" independent contractor test contained in § 39-51-201(14), MCA, was not met. We hold that the Board did not err in concluding, and the District Court did not err in affirming, that Northwest's salespeople are employees for purposes of unemployment insurance taxation.

Northwest also argues that the decision of a hearing examiner in a case involving a business known as Canyon Publications effectively overrules the determination of employee status in this case. The Canyon Publications case apparently is now on appeal before the Board of Labor Appeals and Canyon Publications was permitted to file an amicus brief in this case. Whatever the status or ultimate outcome of the Canyon Publications case, this Court cannot consider that matter unless and until it is properly before us.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

9

_____

_____
                Justices

The Honorable Jeffrey M. Sherlock,
District Court Judge, sitting
for Justice Terry N. Trieweiler

10

Justice John Conway Harrison dissenting.

As noted in the majority's opinion, the leading case on this subject is Standard Chem. Mfg. Co. v. Employment Sec. (1980), 185 Mont. 241, 605 P.2d 610. I would have difficulty disagreeing with Standard Chem. in view of the fact that I am the author of that opinion. However, the record here discloses a fact situation which, in my opinion, is different than that set forth in Standard Chem. Further, the fact situation herein is different enough that I believe the Unemployment Insurance Division of the Montana Department of Labor and Industry is hunting for contributions rather than attempting to be perfectly fair to the independent contractors in this matter, the traveling salespeople under contract with Northwest Publishing. For that reason, I would reverse.

_John Conway Harrison_
Justice

11